**DISTRICT OF COLUMBIA, Appellant,**

v.

**Albert GUEORY, Appellee.**

**No. 11134.**

District of Columbia Court of Appeals.

Argued Feb. 17, 1977.

Decided July 25, 1977.

---

David P. Sutton, Asst. Corp. Counsel, Washington, D.C., with whom John R. Risher, Jr., Corp. Counsel, Louis P. Robbins, Principal Deputy Corp. Counsel, Richard W. Barton, Deputy Corp. Counsel, and Frank W. Stearns, Asst. Corp. Counsel, Washington, D.C., were on the brief, for appellant.

Walter Weir, Jr., Philadelphia, Pa., of the bar of the State of Pennsylvania, pro hac vice, by special leave of the court, with whom Joseph Rubin, Washington, D.C., was on the brief, for appellee.

Before NEBEKER and HARRIS, Associate Judges, and PAIR, Associate Judge, Retired.*

NEBEKER, Associate Judge:

This appeal presents the question whether the trial court erred in dismissing an information charging disruption of a District of Columbia School Board hearing on grounds that the underlying proscriptive Commissioner's Order is facially invalid under the First Amendment. Albert Gueory, appellee, was charged with violating Dis-

---

* Judge Pair did not participate in the decision of this case.

trict of Columbia Commissioner's Order 69–684, Section 1(a), which makes it a misdemeanor to intentionally disrupt the orderly conduct of official business of any agency of the District of Columbia government. Appellee moved to dismiss the information, arguing that the Commissioner's Order was overbroad and vague on its face and therefore violated the mandates of the First Amendment. The trial court granted the motion, and this appeal by the District of Columbia followed. We reverse.

The information under which appellee was charged stated that he

did then and there: willfully and knowingly utter loud and boisterous language within a building owned by the District of Columbia with intent to disturb the orderly conduct of the official business of an agency of the District of Columbia Government, in violation of D. C. Commissioner's Order 69–684 (Issued December 24, 1969) Section 1(a) for which penalty is provided in Section 2.

Commissioner's Order 69–684 provides in pertinent part:

Section 1. No person or group of persons shall wilfully and knowingly:

(a) utter loud, threatening, or abusive language, or engage in any disorderly or disruptive conduct within any building or part of any building owned or under the control of the District of Columbia with the intent to impede, disrupt, or disturb the orderly conduct of any meeting, hearing, or other proceeding of the District of Columbia Council, or of any committee or subcommittee thereof, or the orderly conduct of official business of any officer, employee, or agency of the District of Columbia Government[.]

This Order is virtually identical to D.C. Code 1973, § 9–123(b)(4), which proscribes the same type of behavior in the United State Capitol. A portion of that statute was held constitutional by this court in *Arshack v. United States*, D.C.App., 321 A.2d 845 (1974).

■ Courts are under a general obligation to interpret statutes so as to support their constitutionality. *Screws v. United States*, 325 U.S. 91, 98, 65 S.Ct. 1031, 89 L.Ed.2d 1495 (1945). This is equally true when, under the First Amendment, a statute (or in this case, a commissioner's order) is attacked on overbreadth grounds or on vagueness grounds under the Fifth Amendment. *United States v. O'Brien*, 391 U.S. 367, 383, 88 S.Ct. 1673, 20 L.Ed.2d 672 (1968); *Kovacs v. Cooper*, 336 U.S. 77, 85, 69 S.Ct. 448, 93 L.Ed. 513 (1949); *Cox·v. New Hampshire*, 312 U.S. 569, 575–76, 61 S.Ct. 762, 85 L.Ed. 1049 (1941).

■ It is true that the rights guaranteed' under the First Amendment, like other constitutional rights, must be carefully protected. This is not to say, however, that First Amendment rights are limitless. We have noted that

the rights of freedom of speech . . . are not absolute, and one may not attempt to exercise them in any public place and at any time. . . . [*Feeley v. District of Columbia*, D.C.App., 220 A.2d 325, 328 (1966).]

*See Chaplinsky v. New Hampshire*, 315 U.S. 568, 571, 62 S.Ct. 766, 86 L.Ed. 1031 (1942).

■ Narrowly drawn legislation that incidentally affects freedom of expression can withstand constitutional attack when its purpose is the accomplishment of a valid state interest or goal. It has been widely recognized therefore that regulation in the area of free speech is permissible to protect the First Amendment rights of others.

Expression and communication of thoughts or ideas necessarily entails both of the elements of transmission and reception. Both processes may be interfered with, or denied, to the disturbance or prejudice of the transmitter as well as the transmittee. All persons should be afforded the reasonable right to hear, as well as be heard. The interpretation of the constitutional provisions involved herein should be such that people attending a lawful assemblage will be given the consideration and opportunity to engage in the communication of ideas, by way of listening to such ideas, without undue interference by others in the exercise of

such right. [*State v. Davis,* 21 Ohio App. 2d 261, 267, 257 N.E.2d 79, 83–84 (1969).] *See Cox v. New Hampshire, supra,* 312 U.S. at 574, 61 S.Ct. 762; *In re Kay,* 1 Cal.3d 930, 83 Cal.Rptr. 686, 691, 464 P.2d 142, 147 (1970); *State v. Guy,* 196 Neb. 308, 242 N.W.2d 864, 866 (1976); *State v. McNair,* 178 Neb. 763, 135 N.W.2d 463, 466 (1965). To state this principle in another manner, "one's First Amendment rights end where the same rights of another begin." *Carlson v. City of Tallahassee,* 240 So.2d 866, 869 (Fla.App.1970), *cert. denied,* 403 U.S. 910, 91 S.Ct. 2205, 29 L.Ed.2d 688 (1971).

■ It has also been accepted that the maintenance of public order is a legitimate state interest that will justify incidental regulation of expression.

There is no basis for saying that freedom and order are not compatible. That would be a decision of desperation. Regulation and suppression are not the same, either in purpose or result, and courts of justice can tell the difference. . . . [*Poulos v. New Hampshire,* 345 U.S. 395, 408, 73 S.Ct. 760, 768, 97 L.Ed. 1105 (1953) (footnote omitted).]

*See County of Sullivan v. Filippo,* 64 Misc.2d 533, 315 N.Y.S.2d 519 (1970). This reasoning has led to the conclusion that attempted disruption of government meetings and of daily business is not conduct protected under the First Amendment's guarantees. *See Massachusetts Welfare Rights Organization v. Ott,* 421 F.2d 525 (1st Cir. 1969); *State v. Moore,* 101 N.J.Super. 419, 244 A.2d 522 (1968). "It is such extreme claims as this that tend to bring even legitimate reliance upon free speech into public disfavor." *Massachusetts Welfare Rights Organization v. Ott, supra* at 528.

■ Having determined that disruption is not itself a protected First Amendment right, and that there is a valid state interest in the regulation of such conduct to protect the First Amendment rights of others and the orderly flow of government business,

our question becomes whether Commissioner's Order 69–684 is sufficiently precise and narrow to withstand a constitutional attack aimed at its incidental effect on First Amendment rights.[1] We conclude that it is.

■ Appellee relies heavily, as did the trial court, on the supposed failure of the Order to require that a disturbance actually occur before the Order can be invoked. We do not agree with this interpretation of the Order, however, since it appears that the Order only prohibits "actual or imminent interference" with the peaceful conduct of governmental business. *Grayned v. City of Rockford,* 408 U.S. 104, 111–12, 92 S.Ct. 2294, 33 L.Ed.2d 222 (1972). *Cf. Brandenburg v. Ohio,* 395 U.S. 444, 447–48, 89 S.Ct. 1827, 23 L.Ed.2d 430 (1969). Our construction of the Order does not do violence to its underlying purpose, and will remove any cloud tending impermissibly to permit restriction of speech alone. Surely, the Order is not and cannot be aimed at speech not disruptive and yet reach only conduct which is disruptive. Furthermore, the Order, by requiring that the defendant intend that governmental activity be impeded, disrupted, or disturbed, must be read to require that such governmental activity actually be taking place. The Order, viewed in its entirety, thus must be read to require that the loud, threatening or abusive language be disruptive, or nearly so, of normal governmental process. *See Gooding v. Wilson,* 405 U.S. 518, 92 S.Ct. 1103, 31 L.Ed.2d 408 (1972).

■ As we have noted, the Order affects freedom of expression only tangentially. Rather than attempting to control the content of the speech, the Order is aimed only at the control of intentionally disruptive conduct. While the Order reaches verbal as well as nonverbal acts, it is well settled that in such a situation the state can validly regulate the area as a whole. *Cameron v. Johnson,* 390 U.S. 611, 617, 88 S.Ct. 1335, 20

1. On appeal both parties primarily rely on overbreadth rather than on vagueness contentions. Since the trial court's decision was based on both concepts, however, we shall deal with both.

L.Ed.2d 182 (1968); *United States v. O'Brien, supra,* 391 U.S. at 376, 88 S.Ct. 1673; *Chaplinsky v. New Hampshire, supra,* 315 U.S. at 574, 62 S.Ct. 766; *see Wisconsin v. Eisenberg,* 48 Wis.2d 364, 180 N.W.2d 529, *cert. denied,* 402 U.S. 987, 91 S.Ct. 1669, 29 L.Ed.2d 153 (1971). In determining whether the Order is constitutional, the court must balance the legitimate governmental interests of safeguarding the rights of others and protecting the principle of order against the incidentally affected First Amendment rights of those in appellee's position. *Leiss v. United States,* D.C.App., 364 A.2d 803, 808 (1976), *cert. denied,* —— U.S. ——, 97 S.Ct. 1654, 52 L.Ed.2d 362 (1977). *Feeley v. District of Columbia, supra* at 328. The precision and breadth of the Order's terms are ingredients that affect both sides of this balance.

■ There are a number of factors in the instant case that tend to narrow and define Commissioner's Order 69–684. It should not escape notice that the Order is not so broad as to prohibit the open expression of viewpoints. Instead, it regulates the manner in which viewpoints are expressed, and does so in a way that is facially neutral regarding content. The fact that there are alternative means by which persons such as appellee can communicate their views without resort to disruption and thereby transgressing the Order is of fundamental importance. *See Leiss v. United States, supra* at 808–09.

■ Furthermore, the fact that the Order is limited in time, place and manner also serves to narrow its application. Whether there is a right to speak in a completely unbridled manner depends, in part, on the circumstances and needs peculiar to the forum. *Adderley v. Florida,* 385 U.S. 39, 41, 87 S.Ct. 242, 17 L.Ed.2d 149 (1966); *Leiss v. United States, supra* at 807; *see Kuszynski v. City of Oakland,* 479 F.2d 1130, 1131 (9th Cir. 1973); *Gere v. Stanley,* 453 F.2d 205, 209 (3d Cir. 1971); *In re Kay, supra,* 83 Cal.Rptr. at 691, 464 P.2d at 150. This principle was followed in upholding an antinoise statute narrowed in application to the area surrounding schools that were in

session in *Grayned v. City of Rockford, supra.* The practical effect of this principle is that in certain forums, where the needs of orderly conduct and individual restraint are evident, more regulation is permissible than would be allowed generally. *Compare Cox v. Louisiana,* 379 U.S. 559, 85 S.Ct. 476, 13 L.Ed.2d 487 (1965); *State v. Besson,* 110 N.J.Super. 528, 266 A.2d 175 (1970); *State v. Smith,* 46 N.J. 510, 218 A.2d 147, *cert. denied,* 385 U.S. 838, 87 S.Ct. 85, 17 L.Ed.2d 71 (1966); *State v. Davis, supra, with Gooding v. Wilson, supra; Cox v. Louisiana,* 379 U.S. 536, 85 S.Ct. 453, 13 L.Ed.2d 471 (1965); *Thompson v. Gaffney,* 540 F.2d 251 (6th Cir. 1976); *City of Cincinnati v. Karlan,* 39 Ohio St.2d 107, 314 N.E.2d 162, *cert. denied,* 419 U.S. 1056, 95 S.Ct. 640, 42 L.Ed.2d 654 (1974).

The Order is further narrowed by the fact that it only proscribes activity undertaken with the specific intent to cause disruption. It has long been recognized that a requirement of knowing conduct can serve to narrow a statute attacked on overbreadth and vagueness grounds.

> The [Supreme] Court, indeed, has recognized that the requirement of a specific intent to do a prohibited act may avoid those consequences to the accused which may otherwise render a vague or indefinite statute invalid. The constitutional vice in such a statute is the essential injustice to the accused of placing him on trial for an offense, the nature of which the statute does not define and hence of which it gives no warning. . . . But where the punishment imposed is only for an act knowingly done with the purpose of doing that which the statute prohibits, the accused cannot be said to suffer from lack of warning or knowledge that the act which he does is a violation of law. . . . [*Screws v. United States, supra,* 325 U.S. at 101–02, 65 S.Ct. at 1035 (citations omitted).]

Intent requirements have also narrowed statutes attacked specifically under the First Amendment on overbreadth and vagueness grounds. *See, e. g., Adderley v. Florida, supra,* 385 U.S. at 43, 87 S.Ct. 242;

*Ginzburg v. United States,* 383 U.S. 463, 474–75, 86 S.Ct. 942, 16 L.Ed.2d 31 (1966); *Cox v. Louisiana, supra,* 379 U.S. at 559, 85 S.Ct. 476; *Dennis v. United States,* 341 U.S. 494, 509–10, 71 S.Ct. 857, 95 L.Ed. 1137 (1951); *United States v. Petrillo,* 332 U.S. 1, 7, 67 S.Ct. 1538, 91 L.Ed. 1877 (1947). *See also In re Kay, supra,* 83 Cal.Rptr. at 697, 464 P.2d at 153; *State v. Davis, supra; State v. McNair, supra,* 135 N.W.2d at 467.

■ It must also be remembered that statutes cannot always be drafted with precision. *United States v. Petrillo, supra,* 332 U.S. at 7–8, 67 S.Ct. 1538; *see Roth v. United States,* 354 U.S. 476, 491–92, 77 S.Ct. 1304, 1 L.Ed.2d 1498 (1957). Whether a given regulation is sufficiently precise is to be determined by an evaluation of whether it is understandable to the average person as measured by common understanding and practices. *United States v. Petrillo, supra,* 332 U.S. at 8, 67 S.Ct. 1538; *Kovacs v. Cooper, supra,* 336 U.S. at 79, 69 S.Ct. 448; *see Kirstel v. State,* 13 Md.App. 482, 488, 284 A.2d 12, 15, *dismissed,* 409 U.S. 943, 93 S.Ct. 287, 34 L.Ed.2d 214 (1972). Using this approach we have held previously that a term such as "disturb" is a word of common understanding and is neither overbroad nor vague when used to describe proscribed behavior. *Riley v. District of Columbia,* D.C. App., 283 A.2d 819, 822 (1971), *cert. denied,* 405 U.S. 1066, 92 S.Ct. 1499, 31 L.Ed.2d 796 (1972). *See also State v. Guy, supra,* 242 N.W.2d at 867; *State v. McNair, supra,* 135 N.W.2d at 465.

■ We, therefore, cannot agree with the trial court's determination that Commissioner's Order 69–684 is overbroad and vague. The conduct that the provision seeks to control is well within the legitimate state interest of protecting the rights of others and preserving governmental order. The Order itself is narrowed to actions commenced with specific intent of causing disruption, and it is narrowed in time, place, and manner to disruptive conduct occurring within government buildings when meetings are occurring and daily business is being transacted. The Order does not directly regulate content, and is not so broad as to eliminate freedom of expression. *Compare Police Department v. Mosley,* 408 U.S. 92, 92 S.Ct. 2286, 33 L.Ed.2d 212 (1972); *Jones v. Board of Regents of the University of Arizona,* 436 F.2d 618 (9th Cir. 1970).

Our decision upholding Commissioner's Order 69–684 is in accord with the decisions of other courts faced with similar proscriptions. *See, e. g., State v. Moore, supra; State v. Smith, supra; State v. Besson, supra; In re Kay, supra;* [2] *State v. Chima,* 23 Utah 2d 360, 463 P.2d 802 (1970). *See also Massachusetts Welfare Rights Organization v. Ott, supra.* It is also clear that the regulation does not involve the broad type of administrative discretion that, through on-the-spot application, would tend to chill First Amendment rights. *See Grayned v. City of Rockford, supra,* 408 U.S. at 113–14, 92 S.Ct. 2294; *Cox v. Louisiana, supra,* 379 U.S. at 568–89, 85 S.Ct. 476; *Leiss v. United States, supra* at 806.

The Order is sufficiently narrowed to the legitimate state interest that it serves. It has been said that

> [f]reedom of everyone to talk at once can destroy the right of anyone effectively to talk at all. Free expression can expire as tragically in the tumult of license as in the silence of censorship. . . . [*In re Kay, supra,* 83 Cal.Rptr. at 693, 464 P.2d at 149.]

Since the trial court erred in holding that Commissioner's Order 69–684 was overbroad and vague on its face, the order of dismissal is reversed and the case remanded with directions to reinstate the information.

*Reversed and remanded.*

---

**2.** *In re Kay* concerned a statute that was constitutional on its face but unconstitutional as applied.